# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Xee Y., | Case No. 18-cv-195 (SER) |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, *Acting Commissioner of Social Security*, | |
| Defendant. | |

Gregg B. Nelson, 5754 Blackshire Path, Inver Grove Heights MN 55076, and Thomas A. Krause, 6611 University Avenue, Suite 200, Des Moines IA 50324 (for Plaintiff); and

Elvi D. Jenkins, Assistant Regional Counsel, Social Security Administration, 1301 Young Street, Suite A702, Dallas TX 75202 (for Defendant).

Plaintiff Xee Y. brings the present action, contesting Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. The parties filed cross-motions for summary judgment and consented to a final judgment from the undersigned pursuant to 28 U.S.C. § 636(c) and D. Minn. LR 7.2. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed the instant action on December 2, 2014, alleging a disability onset date of September 11, 2014. Plaintiff alleges impairments of: posttraumatic stress

1

disorder/depression; generalized anxiety disorder; fibromyalgia/chronic pain; high blood pressure; high cholesterol; stomach issues/ulcers; vertigo/headaches/dizziness; arm/leg cramps/inability to walk at times; insomnia; and kidney stones. Plaintiff was found not disabled and that finding was affirmed upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held and, on March 15, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied review. Plaintiff sought review in this Court.

### B. The ALJ's Decision

The ALJ found Plaintiff last met the insured status requirements on December 31, 2014. (Tr. 20). Through the date last insured, the ALJ found Plaintiff had the severe impairments of: mild scoliosis and lumber degenerative disc disease; major depressive disorder; generalized anxiety disorder; post traumatic stress disorder; cognitive defects; and pain disorder. (Tr. 20). The ALJ next concluded that Plaintiff, through the date last insured, did not have an impairment or combination of impairments that met or medically equaled the severity of a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 21). The ALJ looked at Listings 1.04 (disorders of the spine), 12.02 (neurocognitive disorders), 12.04 (anxiety and obsessive-compulsive disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Tr. 21–23). The ALJ determined Plaintiff has the residual functioning capacity ("RFC") to perform medium work with various physical limitations and, with respect to mental limitations, she was "limited to simple routine tasks, and may have occasional superficial contact with

supervisors, coworkers, and members of the public." (Tr. 23). The ALJ defined "superficial" as "rated no lower than an 8 on the *Selected Characteristics of Occupations*' people rating." (Tr. 23). While Plaintiff could not perform her past work, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform when considering her age, education, work experience, and RFC. (Tr. 28–30). Accordingly, Plaintiff was found not disabled from September 11, 2014 through her date last insured, December 31, 2014. (Tr. 30).

## II. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals determined disabled. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C.§§ 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed

impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

If "substantial evidence" supports the findings of the Commissioner, then these findings are conclusive. 42 U.S.C. § 405(g). The Court's review of the Commissioner's final decision is deferential because the decision is reviewed "only to ensure that it is supported by substantial evidence in the record as a whole." *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). The Court's task is "simply to review the record for legal error and to ensure that the factual findings are supported by substantial evidence." *Id.* This Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Burnside v. Apfel*, 223 F.3d 840, 843 (8th Cir. 2000). A court cannot reweigh the evidence or "reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [a court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999).

Plaintiff asserts the ALJ erred in weighing psychologist Dr. Bobbi Gerling's September 11, 2014 psychological assessment and therapist Bea Vue-Benson's February 10, 2017 medical source statement. Under 20 C.F.R. § 404.1527(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship;

4

(2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.

If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. § 404.1527(c)(2). Treating sources are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). And "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

### B. Vue-Benson's Opinion

Vue-Benson completed a medical source statement on February 10, 2017 regarding Plaintiff's psychological ailments and abilities. (Tr. 566–73). Vue-Benson noted Plaintiff's psychological diagnoses were persistent depressive disorder and

generalized anxiety disorder. (Tr. 566). Regarding Plaintiff's ability to work, Vue-Benson opined Plaintiff had extreme limitations in nearly all categories, either having no ability to function, was unable to meet competitive standards, or was seriously limited.[1] (Tr. 568–70). According to Vue-Benson, these limitations were due to Plaintiff's significantly impaired memory and concentration, limited English skills, and fatigue. (Tr. 569–70); *supra* note 1.

Vue-Benson opined Plaintiff had marked limitations in activities of daily living and in maintaining social functioning, extreme limitations in maintaining concentration, persistence, or pace, and experienced no episodes of decompensation. (Tr. 571). But Vue-

---

[1] Specifically regarding Plaintiff's ability to do unskilled work, Vue-Benson opined that Plaintiff had no useful ability to function with respect to: maintaining attention for two-hour segments; maintaining regular attendance and being punctual; completing a normal workday and workweek without interruption from psychological symptoms; performing at a consistent pace without an unreasonable number of rest periods; and dealing with normal work stress. (Tr. 568–69). Vue-Benson indicated Plaintiff was unable to meet competitive standards with respect to: remembering work-like procedures; understanding and remembering very short and simple instructions; making simple work-related decisions; asking simple questions or requesting assistance; responding appropriately to changes in a routine work setting; and being aware of normal hazards and taking appropriate precautions. (Tr. 568–69). Vue-Benson asserted Plaintiff was seriously limited, but not precluded from the following: carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 568–69). Vue-Benson indicated Plaintiff had limited but satisfactory ability to work in coordination with or in proximity to others without being unduly distracted and to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (Tr. 568–69). In support, Vue-Benson wrote that Plaintiff's "significantly impaired memory [and] mental focus limit her ability to pay attention to detailed [and] follow directions accurately." (Tr. 569).
  On Plaintiff's ability to do semiskilled or skilled work, Vue-Benson opined Plaintiff had no useful ability to function in understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with stress of semiskilled and skilled work, and that she was unable to meet competitive standards with respect to setting realistic goals or making plans independently of others. (Tr. 569). Vue-Benson stated that Plaintiff has significant memory and concentration impairments which would interfere with her focus and attention on tasks, as well as chronic pain that interferes with her concentration. (Tr. 570). And concerning Plaintiff's ability to do particular types of jobs, Vue-Benson opined Plaintiff had no useful ability to function to travel in unfamiliar places or use public transportation, she is unable to meet competitive standards in interacting appropriately with the general public and maintaining socially appropriate behavior, and she is seriously limited but not precluded in adhering to basic standards of neatness and cleanliness. (Tr. 570). Vue-Benson indicated these limitations were due to Plaintiff's limited English skills and fatigue. (Tr. 570).

6

Benson asserted Plaintiff would decompensate with even a minimal increase in mental demands or a change in her environment. (Tr. 571). Plaintiff would expect to be absent from work more than four days per month due to her psychological ailments. (Tr. 572). Vue-Benson wrote that, due to Plaintiff's lack of education, "she would be qualified to perform only manual physical labor, which she did for a number of years in the past but cannot do anymore [due to] her unresolved medical/physical conditions." (Tr. 572).

The ALJ considered Vue-Benson's opinion and gave it no weight. (Tr. 27). The ALJ noted the opinion was "offered 3 years after the date last insured, and not reflective of the claimant's mental status and overall functioning as of the date last insured." (Tr. 27).

At the outset, the Court notes that Vue-Benson is not considered an "acceptable medical source" but instead an "other source" that the ALJ *may* use as evidence to show the severity of Plaintiff's impairments. 20 C.F.R. § 404.1513(d)(1); *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005); *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006). Thus, contrary to Plaintiff's argument, the ALJ was not required to go through a rigid recitation of the factors found at 20 C.F.R. § 404.1527(c) when weighing Vue-Benson's opinion.

Moreover, an ALJ is entitled to award an opinion less deference where it is authored years after benefits expire. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). While Plaintiff correctly points out the Vue-Benson's opinion was authored just over *two*

years following Plaintiff's date last insured as compared to the *three* years stated by the ALJ, this difference is immaterial. The ALJ did not reject Vue-Benson's opinion solely because of the date it was authored, but also because it was "not reflective" of Plaintiff's mental health and functioning as of September through December 2014. Plaintiff notes that Vue-Benson answered in the affirmative to a prompt that asks if her description of symptoms "applied to the period September 11, 2014, to December 31, 2014, and thereafter." (Tr. 573). This does not change the ALJ's conclusion that the opinion is inconsistent with the record of Plaintiff's functioning during that period. Nor does it detract from the ALJ's ability to award less deference to the opinion given its temporal distance from the relevant time period.

Plaintiff's mental health treatment was sporadic when considering the severity alleged. Plaintiff began mental health treatment with Vue-Benson on January 28, 2014, reporting symptoms of depression and complaining of chronic pain, hypertension, and gastrointestinal problems. (Tr. 426). Plaintiff's recent memory was impaired, her affect was flat, and her attention was fair, but she was otherwise normal. (Tr. 426). Plaintiff then saw Vue-Benson on February 5, February 18, March 5, March 20, April 16, May 14, June 18, July 9, August 20, September 18, and December 17, 2014, as well as January 15 and March 11, 2015. (Tr. 423–36). At the March 20, 2014 appointment she requested less frequent therapy sessions. (Tr. 430). Vue-Benson reported Plaintiff saw her once per month initially, but for the last 12 to 18 months preceding her opinion only had appointments every 3 to 5 months. (Tr. 566). Plaintiff's request for fewer therapy sessions, followed by further decreases in therapy indicates Plaintiff's ailments are not as

disabling as alleged. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) ("[A] failure to seek treatment may indicate the relative seriousness of a medical problem.").

The December 17, 2014 appointment was a diagnostic assessment wherein Vue-Benson indicated Plaintiff's prognosis was fair to poor depending on Plaintiff's compliance with recommended treatment. (Tr. 424). But the medical records show Plaintiff was not always compliant with her mental health treatment plans. In October 2014, Plaintiff reported she had not picked up her prescribed medication since of that year. (Tr. 371–72). Such noncompliance constitutes evidence that is inconsistent with Vue-Benson's opinion. *See Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). When Plaintiff was compliant with her medications, she reported improvement. (Tr. 371, 373, 325, 455). Indeed, when Plaintiff showed depressive symptoms on December 31, 2013, her depression entered remission as of June 12, 2014 due to medication management. (Tr. 313–39). Even with Plaintiff's depression in remission, however, she was to continue her medication. (Tr. 319). Plaintiff's noncompliance with medical directives diminishes the credibility of her complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Further evidence shows how Vue-Benson's opinion is inconsistent with the relevant time period. While Vue-Benson's 2017 opinion claims Plaintiff has extreme limitations in concentration, she rated Plaintiff's attention as good or fair in every appointment in 2014. (Tr. 423–36). Vue-Benson's 2017 opinion asserts Plaintiff was seriously limited in adhering to basic standards of neatness and cleanliness, but Plaintiff was well kempt at her appointments for the 2014 period. (Tr. 423–36). This inconsistency

with the medical record, particularly her very own treatment notes, undermines Vue-Benson's opinion. *See Hacker*, 459 F.3d at 937 (citing *Prosch*, 201 F.3d at 1013).

While Vue-Benson affirmed that her 2017 opinion related back to the period of August through December 2014, her 2017 opinion is inconsistent with the record for that time period. Plaintiff's decreasing therapy frequency, initiated at her own request, combined with her noncompliance with medication plans, further buttresses the inconsistency found in Vue-Benson's opinion. Thus, the Court concludes the ALJ's decision to award no weight to Vue-Benson's 2017 opinion is supported by substantial evidence in the record as a whole.

### C. Dr. Gerling's Assessment

Bobbi Gerling, PsyD, LPC, completed a psychological assessment of Plaintiff on September 11, 2014. (Tr. 375–79). Dr. Gerling began her report by noting that Plaintiff was presenting at the referral of her lawyer in connection with her reapplication for social security benefits. (Tr. 375). On examination, Plaintiff was dressed neatly, had adequate hygiene, was friendly and cooperative, and demonstrated adequate eye contact. (Tr. 376). She had an overall apathetic affect but was "quite tearful" at points during the evaluation. (Tr. 376). Plaintiff was alert and oriented, her thoughts were linear; her judgment and insight were somewhat limited. (Tr. 376). Plaintiff underwent various testing, but Dr. Gerling noted that while the test results appear to be valid indicators of her abilities, the cultural "characteristics of the test[s] may negatively affect the examinee's performance as opposed to purely struggling with the tasks at hand and hence may not be a valid measure of their cognitive abilities." (Tr. 376–77). Plaintiff's visual motor index was in

the bottom first percentile, classifying her skills as "significantly impaired." (Tr. 377). Plaintiff reported she could not write anything except her name, could not draw, and could not see well. (Tr. 377). Her other testing scores showed she struggled to manage nonverbal information, perceive visual data, organize spatially oriented material, and master abstract properties of visual symbols. (Tr. 377).

Dr. Gerling offered possible explanations for Plaintiff's test performance. Plaintiff may not have understood the tasks, have very poor nonverbal intellectual functioning, or her psychological symptoms may have interfered with her ability to perform well. (Tr. 378). Dr. Gerling opined that, whatever the reason, Plaintiff "has significant problems with learning, which is likely to be complicated by her mental and physical health. It is unlikely that [Plaintiff] will be able to successfully learn, memorize, or recall new or semi abstract information." (Tr. 378). Dr. Gerling's diagnoses were: major depressive disorder, severe with psychotic features; generalized anxiety disorder; posttraumatic stress disorder; and pain disorder associated with both psychological factors and general medical condition. (Tr. 378). Dr. Gerling recommended individual therapy, a psychiatric evaluation to determine if pharmacologic agents would be beneficial, and group therapy. (Tr. 379).

The ALJ considered Dr. Gerling's September 11, 2014 assessment, giving its findings little weight. (Tr. 27). The ALJ found the degree of deficits not wholly consistent with the overall evidence. (Tr. 27). The assessment offered Plaintiff's poor nonverbal intellectual functioning as an explanation of her poor performance, but the ALJ noted contemporaneous records do not support very poor nonverbal intellectual

11

functioning. (Tr. 27–28). The record has no discussion of learning issues apart from Plaintiff's lack of English proficiency and no evidence of intervening head injury or other trauma to account for the findings that differed from the November 25, 2013 decision on Plaintiff's previous application for benefits. (Tr. 27–28). That previous decision, not appealed by Plaintiff, found severe mental impairments of adjustment disorder and dependent personality disorder, and found Plaintiff had no more than moderate limitations and could perform simple, repetitive tasks in unskilled work with brief and superficial contacts. (Tr. 27). The ALJ noted Plaintiff worked in semi-skilled positions and earned her driver's license. (Tr. 28). Thus, the ALJ found the assessment was not a "reflection of [Plaintiff's] baseline level of functioning, but possibly [of] her undertreated mental health." (Tr. 28). The ALJ found records subsequent to the September 2014 assessment "remain sporadic at best" and "do not suggest a significant worsening of signs or symptoms or functioning, and she did require any acute or crisis mental health intervention." (Tr. 28).

The ALJ properly weighed Dr. Gerling's September 2014 assessment. As the assessment itself notes at the very beginning, Plaintiff presented only in connection with her application for benefits. The ALJ was permitted to discount the assessment where it was linked primarily to Plaintiff obtaining benefits. *Page v. Astrue*, 484 F.3d 1040, 1043–44 (8th Cir. 2007); *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Moreover, while Plaintiff did receive medication management at Natalis Counseling & Psychology

Solutions where Dr. Gerling is employed,[2] there is no record that Dr. Gerling was ever involved in Plaintiff's treatment outside of the September 2014 assessment. (Tr. 371–74, 455–58, 535–39, 554–55, 563–64). It is not error for the ALJ to discount Dr. Gerling's opinion where she saw Plaintiff only once. *Conklin v. Barnhart*, 206 F. App'x 633, 636 (8th Cir. 2006) ("The opinion of a consulting physician who has seen a claimant only once, on the other hand, is afforded far less weight."); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006); *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (citing *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)); *Moore v. Berryhill*, Case No. 16-cv-3585 (MJD/BRT), 2017 WL 6939163, at *8–*9 (D. Minn. Dec. 12, 2017); *Sorensen v. Colvin*, 2015 WL 5029169, at *17–*18 (D.S.D. Aug. 25, 2015); *Hunter v. Astrue*, Case No. 08-cv-5245 (MJD/RLE), 2009 WL 3242021, at *24 (D. Minn. Oct. 2, 2009).

Dr. Gerling's own opinion stressed the importance of reading the test results with caution. Plaintiff is a Hmong refugee who does not speak English. (Tr. 375). The testing provided by Dr. Gerling, while designed to be "culturally unbiased," contained "some bias inherent in each task." (Tr. 376). The tests "do not have norms established for individuals who were not born in the United States." (Tr. 377). Thus, "the characteristics of the test[s] may negatively affect the examinee's performance as opposed to purely struggling with the tasks at hand and hence may not be a valid measure of their cognitive abilities." (Tr. 377). Dr. Gerling warned that the "reader should keep these limitations in

---

[2] Plaintiff was treated by Dr. Arlene Boutin, who provides no opinion in the record as to Plaintiff's psychological impairments or abilities.

mind." (Tr. 377). Indeed, while explaining Plaintiff's poor results, Dr. Gerling again led with the caveat that Plaintiff may not have understood the tasks. (Tr. 378). As the ALJ noted, Plaintiff's own semi-skilled work history and activities—such as maintaining a valid driver's license—belied her test results showing she was in the bottom 1% of functioning. And, as the ALJ explained, less than one year prior to Dr. Gerling's testing, an earlier ALJ concluded Plaintiff had the RFC to do light work provided she was limited to unskilled work involving only simple, repetitive tasks and was limited to brief and superficial interaction with the public and coworkers. (Tr. 64–65). Plaintiff never appealed that finding. As the ALJ referenced, there are simply no medical records explaining or showing the precipitous deviation from that finding to Dr. Gerling's.

Notwithstanding the above, the main work-related opinion offered by Dr. Gerling in her September 2014 assessment is that it would be unlikely for Plaintiff to "be able to successfully learn, memorize, or recall new or semi abstract information." (Tr. 378). Like the ALJ on Plaintiff's previous application for benefits, the ALJ here limited Plaintiff to simple routine tasks and occasional superficial contact with supervisors, coworkers, and members of the public. (Tr. 23, 65). Dr. Gerling's opinion on Plaintiff's limitation for abstract information does not preclude an RFC which permits simple and routine tasks.

The ALJ did not err in weighing or considering Dr. Gerling's September 2014 assessment. Dr. Gerling saw Plaintiff only once and it was at the request of Plaintiff's attorney in connection with her application for benefits. In her report, Dr. Gerling cautioned about the limitations of the testing given Plaintiff's linguistic and cultural barriers. As the ALJ noted, the extreme limitations found in the testing do not comport

with the medical record, Plaintiff's work history, and Plaintiff's activities. Regardless, the limitation opined by Dr. Gerling is consistent with the RFC formulated by the ALJ. Accordingly, this Court concludes the ALJ's decision concerning Dr. Gerling's opinion is supported by substantial evidence in the record as a whole.

### III. CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 17), is **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 19), is **GRANTED**, and this matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: March 5, 2019 	*s/ Steven E. Rau*
Steven E. Rau
United States Magistrate Judge
District of Minnesota

*Xee Y. v. Berryhill*
Case No. 18-cv-195 (SER)